IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEXAS EASTERN TRANSMISSION, LP, | : : : | Civil No. 1:14-cv-354 |
| **Plaintiff** | : | |
| v. | : : | |
| A PERMANENT EASEMENT OF 0.5 ACRES ± AND A TEMPORARY EASEMENT OF 1.2 ACRES ± OF LAND IN WEST HANOVER TOWNSHIP, DAUPHIN COUNTY, PENNSYLVANIA, R/W TRACT NO. 60; | : : : : : : : : : | |
| A ROAD EASEMENT 800' BY 25' ± IN WEST HANOVER TOWNSHIP, DAUPHIN COUNTY, PENNSYLVANIA; | : : : : : | |
| NATIONAL STONE QUARRIES, LLC, Owner; | : : : | |
| AND ALL UNKNOWN OWNERS AND INTERESTED PARTIES, | : : : | |
| **Defendants** | : | **Judge Sylvia H. Rambo** |

# **M E M O R A N D U M**

Presently before the court is Plaintiff Texas Eastern Transmission, LP's ("Texas Eastern") motion for partial summary judgment on the issue of whether National Stone Quarries, LLC ("National") can include the cost of damages related to vandalism on its property in the calculation of just compensation in the above-captioned eminent domain proceeding. (Doc. 33.) For the reasons that follow, Texas Eastern's motion will be granted.

## I. Background

The facts relevant to the disposition of the instant motion are not in dispute, and the court's discussion of said facts is limited to those necessary to decide the issue presented therein.

Texas Eastern is an interstate natural gas company, currently in the process of constructing an interstate gas transport pipeline. National is the owner of a certain tract of land located in West Hanover Township, Dauphin County, Pennsylvania, as described in a Deed dated August 6, 2010, recorded in the Dauphin County Recorder's Office at Instrument No. 20100023101, Tax Parcel No. 68-013-001 (the "Property"). Texas Eastern initiated the instant action by complaint filed on February 26, 2014, exercising its federal eminent domain authority[1] to acquire easements in lands owned by National. (Doc. 1.) Texas Eastern had previously acquired three permanent easements across the lands owned by National, which existed at the time National acquired the lands. (Doc. 33-1, ¶ 2.) Pertinently, Texas Eastern sought a fourth permanent easement across the Property to construct an additional pipeline. (*Id.* at ¶ 3.) Rather than answering the complaint, National entered into a stipulation, approved by the court on March 20, 2014, (Doc. 10 (the "Possession Order")), which authorized Texas Eastern to immediately enter the

---

[1] Texas Eastern derives said authority from the Natural Gas Act (the "NGA"), 15 U.S.C. § 717f(h), and a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission (the "FERC Certificate").

Property to construct the pipeline. On December 8, 2014, Texas Eastern filed an amended complaint, setting forth amended dimensions for the pipeline and related changes to the easement. (Doc. 16.) It appears that, as of the date of this opinion, construction on the portion of the pipeline running through the Property is complete.

The parties do not dispute that the Possession Order was valid or that Texas Eastern had the legal authority to take possession of the Property for purposes of constructing the pipeline. The only remaining issue is the amount of "just compensation" to be paid for the taking pursuant to the Fifth Amendment of the United States Constitution. Relevant to that issue, National asserts that it is entitled to include certain damages caused by vandalism on its property in the calculation of just compensation. The condemnation officially took effect on March 20, 2014. (Doc. 33-1, ¶ 6.) There is no dispute that the vandalism took place between May 2014 and May 2015, or that National's property was damaged. (*See* Doc. 36, ¶ 4 ("trespassers vandalized the building structures and quarry equipment located on the property causing in excess of eighty-thousand dollars ($80,000.00) damage that was preventable with minimal diligence by Texas Eastern").) National admits that third parties, not affiliated with Texas Eastern, are the culprits of the vandalism. (*Id.* at ¶ 8.) National, however, submits that Texas Eastern indirectly caused the damage by failing to adequately secure the Property and, thus, allowed the vandals to enter onto National's land. (*Id.*) National estimates the total cost to alleviate the damage

was approximately $80,000. (*Id.* at ¶ 4.) Texas Eastern, however, disagrees that the entire $80,000 should be attributed to the vandalism, but instead, asserts that that figure relates to a "renovation" of National's property. (Doc. 33-1, ¶¶ 9-10.) Texas Eastern filed the instant motion for summary judgment to determine whether National may validly include costs related to the vandalism in the calculation of just compensation under the Fifth Amendment and the NGA. The motion has been fully briefed and is ripe for disposition.

## II. <u>Legal Standard</u>

Initially, the court notes that this issue may have been brought as a motion *in limine* to exclude as irrelevant evidence of the damage resulting from the vandalism. Because neither party argues that summary judgment as to this issue would be improper, however, the court will consider the motion under the summary judgment standard. *Compare Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement (Pipeline Right-of-Way Servitude)*, No. 17-CV-10365, 2018 WL 3322995, at *16 (E.D. Mich. July 6, 2018), *reconsideration denied sub nom. Next Week Rover Pipeline LLC v. 1.23 Acres of Land*, No. 17-10365, 2019 WL 989280 (E.D. Mich. Mar. 1, 2019) (granting motion *in limine* to exclude expert testimony of damages sounding in tort related to taking) *with Millennium Pipeline Co. v. Certain Permanent & Temp. Easements*, 777 F. Supp. 2d 475, 483 (W.D. N.Y. 2011), *aff'd sub nom.*, 552 F. App'x. 37 (2d Cir. 2014) (on motion for partial

summary judgment, rejecting recovery of damages by condemnee, such as compensatory and punitive damages, beyond what would constitute "just compensation" under the NGA).

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by

"pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. <u>Discussion</u>

The parties agree as to the general legal principles involving eminent domain and just compensation for takings. The United States may take private property for public use by eminent domain or authorize by statute certain private entities to exercise that authority. Regardless of whether the United States or an authorized entity executes the taking, either is obliged by the Fifth Amendment to provide "just compensation to the owner thereof." *United States v. 6.45 Acres of Land*, 409 F.3d 139 (3rd Cir. 2005) (citing *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9 (1984)); *Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres & Temp.*

6

*Easements for 5.4130 Acres in Shohola Twp., Pike Cty., Pa.*, No. 11-cv-028, 2014 WL 690700, *8 (M.D. Pa. Feb. 24, 2014).

The NGA, 15 U.S.C.S. § 717(f) *et seq.*, governs the calculation of just compensation where an interstate gas company such as Texas Eastern exercises the taking authority of the United States. *Columbia Gas Transmission, LLC v. An Easement To Construct Operate & Maintain a 20 Inch Gas Transmission Pipeline Across Properties in Washington Cty., Pa. By Quarture*, 745 F. App'x 446, 449 n.4 (3d Cir. 2018) (*Columbia Gas*) ("Federal law governs the measure of just compensation owed to landowners in condemnation actions under the Natural Gas Act." (citations omitted)). Under the NGA, "just compensation" means the fair market value of the property on the date it is appropriated or, in other words, what a willing buyer would pay to a willing seller at the time of the taking. *Id.* (citing *Kirby Forest*, 467 U.S. 1, 9). The Fifth Amendment requires that the owner be put in the same position financially as he or she would have occupied had the property not been taken. *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 236 (2003) ("[a condemnee] is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more") (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)). Where there has been only a "partial taking," just compensation is measured by the difference between the market value of the entire holding, including any improvements thereon, immediately prior

to the taking and the remaining market value immediately after the taking. *United States v. 403.14 Acres of Land*, 553 F.2d 565 at 567. For partial takings, the landowner's compensation includes "any element of value arising out of the relation of the part taken to the entire tract". *United States v. Miller*, 317 U.S. 369, 376 (1943). The compensation to be awarded includes all elements of value intrinsic to the property but it must not exceed market value. *United States v. Twin City Power Co.*, 350 U.S. 222, 235 (1956).

The landowner bears the burden to prove by a preponderance of the evidence what constitutes just compensation. *Columbia Gas*, 745 F. App'x at 449-50. A landowner satisfies his burden by "producing competent expert testimony as to the land's value before and after the taking." *Id.* Generally, a landowner may give opinion evidence as to the value of their land due to the special knowledge of the property which is presumed to arise out of ownership. *Id.* An award of just compensation under federal law cannot be determined by separately valuing the various legal interests in the land condemned. *United States v. 6.45 Acres of Land*, 409 F.3d 139, 146 (3d Cir 2005).

Under Federal law,[2] the court cannot agree that the damages resulting from the tortious acts of a third party, even if negligently caused by the entity taking the

---

[2] In their briefs, the parties note that it was unclear whether federal or state law applies to the calculation of just compensation. It appears, however, that the Third Circuit has held that federal law applies in proceedings under the NGA. *Columbia Gas*, 745 F. App'x at 449 n.4. However,

property, may be included in the calculation of just compensation. National's request would erode the foundational principal of eminent domain law that just compensation is limited to those losses inherent to the taking itself. *See United States v. 50 Acres of Land*, 469 U.S. 24, 33 (1984) ("the Fifth Amendment does not require any award for consequential damages arising from a condemnation."). The most analogous claim for damages to that raised by National is the concept of severance damages, which involve loss of value to adjoining tracts of land caused by the taking itself. *United States v. 38.60 Acres of Land, More or Less, Situate in Henry Cty., State of Mo.*, 625 F.2d 196, 199 (8th Cir. 1980) ("Claims for severance damages, however, must be distinguished from claims for the actual physical invasion of the remainder resulting from the intended use of the land taken, which are in effect counterclaims for compensation in inverse condemnation. Such a distinction is critical because the district court has no jurisdiction in a condemnation action to entertain counterclaims."). Courts have often dismissed counterclaims arising out of takings that are not inherent to the taking itself.[3] *In re Stephenson*, 66

---

even under Pennsylvania law, it does not appear that damages sounding in tort would be available in eminent domain proceedings. *See York Rd. Realty Co., L.P. v. Cheltenham Twp.*, 136 A.3d 1047, 1054 (Pa. Cmwlth. Ct. 2016), *app. denied*, 164 A.3d 473 (Pa. 2016) (consequential damages pursuant to section 714 of the Pennsylvania Eminent Domain Code are strictly limited and not recoverable unless specifically authorized); *Benner v. Silvis*, 950 A.2d 990, 995 (Pa. Super. Ct. 2008) (same); *Cohen v. Redevelopment Auth. of City of Phila.*, 315 A.2d 372, 374 (Pa. Cmwlth. Ct. 1974) (loss of advertising materials constitutes noncompensable consequential damages).

[3] Other courts have dismissed attempts to recover tort damages as counterclaims in eminent domain proceedings. *See United States v. General Motors Corp.*, 323 U.S. 373, 379-80 (1945); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, Located in Section 6, Sw. Quarter,*

F.3d 345, *2 (Fed. Cir. 1995) ("the federal courts of appeal uniformly have held that a district court lacks jurisdiction to entertain a true counterclaim in a condemnation proceeding, that is, a separate freestanding claim that otherwise could be asserted independently in another proceeding.") (citing *United States v. 38.60 Acres of Land*, 625 F.2d 196 (8th Cir.1980); *United States v. 40.60 Acres of Land*, 483 F.2d 927 (9th Cir.1973); *United States v. 6,321 Acres of Land*, 479 F.2d 404 (1st Cir.1973)). Here, National seeks to avoid the general principal that counterclaims are impermissible in eminent domain proceedings by couching its negligence claim as a factor to be considered in the just compensation calculation. National has failed to cite any case in which a court considered similar damages in such a calculation, and this court sees no reason to allow what is clearly a tort claim to be raised in the present action simply by failing to plead it as such. Other courts agreed with this principal by declining to admit evidence of damages ancillary to the taking itself. *Rover Pipeline*, 2018 WL 3322995 at *16 ("Thus, any evidence of alleged torts committed during the course of construction is excluded for this condemnation case.") (citing *United States v. 79.20 Acres of Land, More or Less, Situated in*

---

*Twp. 32 S., Range 10 W., Cty. of Barber, State of Kan.*, 210 F. Supp. 2d 1253, 1258 (D. Kan. 2002) (dismissing counterclaim for trespass and damage to property, concluding that Federal Rule of Civil Procedure 71A(e) [amended to Rule 71.1 in 2007] requires counterclaims for damages in eminent domain proceedings to be filed as a separate action); *accord* Appearance or Answer, 12 Fed. Prac. & Proc. Civ. § 3048 (3d ed.) (citing *U.S. v. Certain Land Situated in City of Detroit*, 361 F.3d 305 (6th Cir. 2004).

*Stoddard Cty., Mo.*, 710 F.2d 1352, 1356 (8th Cir. 1983)). Accordingly, National is precluded from pursuing the alleged damages resulting from vandalism to its property in the above-captioned matter.

In the alternative, National also appears to seek relief under the doctrine of *de facto* taking. Even if such a claim were procedurally viable in this action, National fails to make even a *prima facie* showing of such a claim. In its brief in opposition to partial summary judgment, National adequately sets forth the law of *de facto* taking in Pennsylvania:

> To assert a claim of *de facto* taking, the landowner must establish three elements. "First, the alleged condemnor must possess the power of eminent domain. *In re Condemnation by Commw. Of Pa., Dep't of Transp., of the Right-of Way for State Route 0079, Section 290, a Ltd. Access Highway in the Twp. Of Cranberry*, 805 A.2d 59, 68 (Pa. Commw. Ct. 2002) (citing *In re Jacobs Appeal*, 55 Pa. Commw. 142, 423 A.2d 442, 443 (Pa. Commw. Ct. 1980). Second, the plaintiff must show "that there are exceptional circumstances that substantially deprive the property owner of the beneficial use and enjoyment of the property." *Id.* (emphasis in original) (citing *Conroy-Prugh Glass Co. v. Dep't of Trans.*, 456 Pa. 384, 321 A.2d 598, 600 (Pa. 1974)). Third, the plaintiff "must demonstrate that the deprivation is the immediate, necessary and unavoidable consequence of the exercise of the power to condemn." *Id.* (citing *In re Petition of 1301 Filbert Ltd. P'ship for the Appointment of Viewers*, 64 Pa. Commw. 605, 441 A.2d 1345, 1352 (Pa. Commw. Ct. 1982)). The plaintiff in a *de facto* takings case "bears a heavy burden of proof, and each case turns on its unique factual matrix." *Genter v. Blair Cnty. Convention & Sports Facilities Auth.*, 805 A.2d 51, 56 (Pa. Commw. Ct. 12 2002) (Quoting *Riedel v. Cnty of Allegheny*, 159 Pa. Commw. 583, 633 A.2d 1325, 1328 (Pa. Commw. Ct. 1993))." *Fay v. Dominion Transmission, Inc.* 2012 U.S. Dist. LEXIS 102671, 2012 WL 3027835 (Middle District of Pa. 2012).

(Doc. 35, pp. 17-18.) (citations and grammar as in original). Only the first element of a *de facto* taking is arguably present here.[4]

Initially, National has offered no evidence that it has been substantially deprived of the use of its land. Obviously, some damage was done to National's property, but National has made no showing that the damage was so severe that it was deprived of the use of said property. Secondly, the alleged damage is neither a necessary nor unavoidable consequence of the taking itself. National in fact admits that the damage was avoidable. National claims that the vandals gained access to the property because Texas Eastern did not take care to lock a gate, removed barriers to the Property, and generally failed to secure the Property. By their nature, such acts were avoidable and were not inherent to the construction of the pipeline. Accordingly, Texas Eastern's actions would not satisfy the elements of a *de facto* taking.

Although the damages alleged by National are not includable in the calculation of just compensation, they are not unrecoverable as a matter of law. All indicia in National's averments point to the potential for recovery in negligence or some other tort claim. Eminent domain proceedings are simply the wrong venue for National to adjudicate these claims.

---

[4] From the facts presented, it is unclear if Texas Eastern would even qualify as the condemnor since the parties agree that agents unaffiliated with Texas Eastern actually caused the damage to the property, which National asserts qualifies as a *de facto* taking.

12

## IV. **Conclusion**

For the reasons set forth above, National may not include damages related to vandalism allegedly caused by Texas Eastern in the calculation of just compensation in the above-captioned matter. Accordingly, Texas Eastern's motion for summary judgment will be granted.[5]

An appropriate order will follow.

S/SYLVIA H. RAMBO<br>
United States District Judge

Dated: April 1, 2019

---

[5] The court will address pending motions *in limine* via separate memorandum and order.